UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIO C. MORILLO CABREJA, ANA YOLANDA CRUZ AND JONATHAN ROMERO CEVALLOS, Individually and on behalf of all other persons similarly situated, | ECF CASE |
| | No.: _____ |
| Plaintiffs, | CLASS AND COLLECTIVE ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| DISCOUNT BROADWAY INC., D/B/A MAX DEALS, DOLLAR JUNCTION, AND DOLLAR DEALS, AND MUHAMMAD S. ANDHA, Jointly and severally, | |
| Defendants. | |

Plaintiffs Julio C. Morillo Cabreja, Ana Yolanda Cruz and Jonathan Romero Cevallos allege through their attorneys, Lipsky Lowe LLP, as Discount Broadway Inc. d/b/a Max Deals, Dollar Junction and Dollar Deals ("Discount Broadway") and Muhammad S. Andha as follows:

<u>NATURE OF THE ACTION</u>

1.      Plaintiffs Julio C. Morillo Cabreja, Ana Yolanda Cruz and Jonathan Romero Cevallos ("Plaintiffs") worked for Discount Broadway Inc. d/b/a Max Deals, Dollar Junction and Dollar Deals ("Discount Broadway") and Muhammad S. Andha (collectively "Defendants") as retail associates at Defendants' multiple New York City store locations from October 2014 to in or around October 2021. [1]

2.      Plaintiffs allege, on their behalf and on behalf of the other similarly situated current and former employees of Defendants, under Fed. R. Civ. P. 23 (a) and (b), that

_____

[1] The date ranges are estimates based on Plaintiffs' memory.

Defendants willfully violated the New York Labor Law by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay, (iii) failing to pay spread-of-hours pay; (iv) failing to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1; and (v) failing to provide an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

3.    Plaintiffs allege on their behalf and on behalf of the other similarly situated current and former employees of Defendants and those who elect to opt into this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that Defendants willfully violated the FLSA by (i) failing to pay overtime premium pay, and (ii) making unlawful deductions.

4.    Plaintiff Cevallos, on behalf of himself, further asserts the following claims against Defendants: race and national origin discrimination, harassment and hostile work environment under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), and assault and battery under New York common law.

<u>JURISDICTION AND VENUE</u>

5.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' FLSA claims under 29 U.S.C. § 216(b).

6.    Venue is proper in this District under 28 U.S.C. §§1391(b)(1) and (2).

7.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

8.      Plaintiff Julio C. Morillo was and is, at all relevant times, an adult individual residing in Queens, New York.

9.      Plaintiff Ana Yolanda Cruz was and is, at all relevant times, an adult individual residing in Brooklyn, New York.

10.     Plaintiff Jonathan Romero Cevallos was and is, at all relevant times, an adult individual residing in Brooklyn, New York.

11.     Discount Broadway is a domestic business corporation that is organized under New York law and is authorized to do business in the State of New York, with its principal place of business at 1787 Broadway, Brooklyn, New York, 11207.

12.     Upon information and belief, Defendants employ more than 20 employees at all of their store locations.

13.     Discount Broadway is, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce. Discount Broadway is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000. These goods and materials that have been produced for and moved in commerce, which its employees have handled, include, but are not limited to glassware, candles, toilet paper and household products.

14.     Defendant Andha, upon information and belief, owns Discount Broadway in whole or in part.

15.     Defendant Muhammad S. Andha, operates and controls Discount Broadway and its day-to-day operations and management and jointly employed Plaintiffs and other similarly situated employees at all relevant times.

16.     Each Defendant, either directly or indirectly, has hired or fired Plaintiffs and other similarly situated employees, controlled their work schedule and employment conditions, determined their payment rate and method, and kept at least some records regarding their employment.

17.     Defendants jointly employed Plaintiffs and other individuals at all times relevant.

18.     Defendants are part of a single integrated enterprise that has jointly employed Plaintiffs and similarly situated employees at all relevant times.

19.     During all relevant times, Defendants' operations are interrelated and unified across their multiple store locations.

20.     During all relevant times, Defendants have applied the same employment policies, practices, and procedures to all employees in all of their store locations.

21.     During all relevant times, Defendants have controlled the labor relations of Discount Broadway at all of their store locations.

22.     During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and Labor Law.

<u>STATEMENT OF FACTS</u>

23.     Defendants own and operate numerous discount stores in New York City, operating under different assumed names, including the stores where Plaintiffs worked: Max Deals, located at 1787 Broadway, Brooklyn, New York, 11207 ("Max Deals"); Max

Deals, located at 4290 Broadway, New York, New York, 10033 ("Max Deals II"); Dollar Junction, located at 1550 Broadway, Brooklyn, New York, 11221 ("Dollar Junction"); and Dollar Deals, located at 1295 Broadway (Grove Street), Brookly, New York, 11221 ("Dollar Deals").

Store Locations and Dates of Employment[2]

24.     From in or about June 2018 to August 2018, Defendants employed Plaintiff Morillo as a retail associate at Dollar Deals.

25.     On June 1, 2021, Defendants opened a new store, Max Deals.

26.     From March 10, 2021 to June 1, 2021, Defendants employed Plaintiff Morillo as a laborer at Max Deals, prior to its opening. From June 1, 2021 to October 2021, after Max Deals opened, Defendants employed him as a retail associate.

27.     For two months in the winter of 2020, Defendants employed Plaintiff Cruz as a retail associate at Dollar Deals.

28.     From April 2021 to June 1, 2021, Defendants employed Plaintiff Cruz as a laborer at Max Deals. From June 1, 2021 to October 2021, Defendants employed Plaintiff Cruz as a retail associate at Max Deals.

29.     From October 2014 to September 2021, Defendants employed Plaintiff Cevallos as a retail associate at Dollar Junction. Additionally, during his employment, Defendants required Plaintiff Cevallos to work, on as needed basis and a few days at a time, at several other store locations, including at Max Deals II.

Duties Performed

30.     Plaintiffs, as retail store associates, were responsible for receiving

---

[2] These subject lines are included only for organizational purposes.

deliveries, unpacking and unloading deliveries with products, stocking shelves with products, keeping product lanes organized and stocked, labeling products with prices, keeping track of inventory and when products need to be reordered.

31.     As laborers, Plaintiffs Morillo and Cruz's duties included loading and unloading deliveries, cleaning the store during and after the construction, setting up shelves and stocking them with products for the store opening.

32.     During their employment, each store that Plaintiffs worked at employed at least 3 to 5 retail associates at any given time and 3 to 5 other employees, such as cashiers, security and managers.

33.     During their employment with Defendants, due to high turnover, upon information and belief, Plaintiffs worked with at least 20 other retail associates at the several store locations. From personally observing and speaking with them, Plaintiffs know that their coworkers performed the same primary duties as them and were compensated in the same manner by Defendants.

<u>Hours Worked and Weekly Salaries Paid</u>

34.     At Dollar Deals, Plaintiff Morillo worked 2 days per week, on alternating days, from 10:00 a.m. to 7:30 p.m., with a 30-minute lunch break, working 9 hours a day and 18 hours per week.

35.     At Dollar Deals, Plaintiff Marillo was paid $160.00 for his work.

36.     At Dollar Deals, Plaintiff Cruz worked at least 4 days a week, on alternating days, from 10:00 a.m. to 7:30 p.m., with a 30-minute lunch break, equaling 9 hours per day and 36 hours per week.

37.     At Dollar Deals, Defendants paid Plaintiff Cruz a $350.00 weekly salary.

38.    At Max Deals, until its June 1, 2021 opening, Plaintiffs Morillo and Cruz generally worked 6 days a week and had Sunday off. From Monday to Saturday, they worked from 9:00 a.m. to 9:00 p.m., with 30-minute lunch break, totaling 12 hours per day and 72 hours per week.

39.    At Max Deals, after its June 1, 2021 opening, Plaintiff Morillo and Cruz generally worked 6 days a week with Saturdays off. From Monday to Friday, they worked from 9:30 a.m. to 7:30 p.m., with a 30-minute lunch break, totaling 9.5 hours per day, and on Sundays they worked from 9:30 a.m. to 7:00 p.m., with a 30-minute lunch break, equaling 9 hours per day and totaling 56.5 hours per week.

40.    At Max Deals, Plaintiffs Morillo and Cruz were paid a $550.00 weekly salary.

41.    At Dollar Junction, Max Deals II and at other stores where he worked for Defendants, Plaintiff Cevallos worked 6 to 7 days a week, working from 9:30 a.m. to 8:00 p.m., with a 30-minute lunch break, equaling 10 hours per day and 60 to 70 hours per week.

42.    At Dollar Junction, Max Deals II and at other stores where he worked for Defendants, Plaintiff Cevallos was paid a $500.00 weekly salary in 2015, a $550.00 weekly salary from 2016 to 2019, and a $625.00 weekly salary in 2020 and 2021.

Unlawful Deductions from Plaintiffs' Pay

43.    During Plaintiffs' and other similarly situated employees' employment, if their lunch lasted even a few minutes over their allotted 30-minute lunch break, Defendants would regularly deduct an entire hour from their pay. For instance, if an employee took a 35-minute lunch, Defendants regularly deducted an entire hour from their pay.

44.     If Plaintiffs and other similarly situated employees were late to work even a few minutes, Defendants regularly deducted an entire hour from their pay.

45.     When Plaintiffs and other similarly situated employees complained about the improper deductions from their wages and not being paid for all of the hours worked, Defendants ignored their complaints or worse, retaliated against them by assigning them dirtier and harder work projects. And, without fail, Defendants refused to provide Plaintiffs with any documentation for these deductions.

46.     During their employment, Defendants paid Plaintiffs part of their wages in cash and part by check.

47.     Despite generally working over 40 hours in any given week, Plaintiffs' checks incorrectly showed that they allegedly worked only part-time, approximately 20 hours per week. Additionally, the paystubs contained inaccurate pay rates, which were much higher than what Plaintiffs were actually paid.

Unpaid Wages, Overtime, Spread-of-Hours Pay

48.     During their employment with Defendants, Plaintiffs worked more than 40 hours in any given week.

49.     From speaking with their coworkers and personal observations, Plaintiffs know that other retail associates, like them, were regularly scheduled to work and did, in fact, work more than 40 hours in a week.

50.     Defendants were not permitted to pay Plaintiffs a fixed weekly salary.

51.     Plaintiffs' pay did not vary regardless of how many hours they worked, with the exception of Defendants' arbitrary deductions from their pay.

52.     Defendants failed to pay Plaintiffs the New York State minimum wage because their average hourly rates fell below the applicable minimum wage requirements during their employment.

| Year | Morillo's Weekly Earnings | Minimum Weekly Hours Worked | Morillo's Average Hourly Rates | Labor Law Minimum Wage |
|------|---------------------------|-----------------------------|--------------------------------|------------------------|
| 2018 | $160.00 | 18 | $8.88[3] | $13.00 |
| 2021 | $550.00 | 56.5 | $9.73 | $15.00 |

| Year | Cruz's Weekly Earnings | Minimum Weekly Hours Worked | Cruz's Average Hourly Rates | Labor Law Minimum Wage |
|------|------------------------|-----------------------------|-----------------------------|------------------------|
| 2020 | $350.00 | 36 | $9.72 | $15.00 |
| 2021 | $550.00 | 56.5 | $9.73 | $15.00 |

| Year | Cevallos's Earnings Plaintiff | Minimum Weekly Hours Worked | Cevallos's Average Hourly Rates | Labor Law Minimum Wage |
|------|-------------------------------|-----------------------------|---------------------------------|------------------------|
| 2016 | $550.00 | 60 | $9.16 | $9.00 |
| 2017 | $550.00 | 60 | $9.16 | $11.00 |
| 2018 | $550.00 | 60 | $9.16 | $13.00 |
| 2019 | $550.00 | 60 | $9.16 | $15.00 |
| 2020 | $625.00 | 60 | $10.41 | $15.00 |
| 2021 | $625.00 | 60 | $10.41 | $15.00 |

53.     By paying Plaintiffs a fixed weekly salary, Defendants failed to pay them *any* overtime compensation.

54.     Although Plaintiffs and other similarly situated employees regularly worked more than 40 hours per week, Defendants did not pay Plaintiffs overtime premium pay: 1.5 times their regular hourly rate.

55.     Plaintiffs' effective hourly rate was below New York's minimum wage for all relevant years.

---

[3] $160.00 / 18 = $8.88 average hourly rate

56.     For days that Plaintiffs worked more than 10 hours in a day, Defendants did not pay them spread-of-hours pay: an extra hour at the minimum wage.

57.     From speaking with them, Plaintiffs know that other laborers and retail associates, like them, were paid below the statutory minimum wage, were not paid overtime premium pay, and were not paid spread-of-hours pay.

Labor Law Notice and Wage Statement Violations

58.     Defendants failed to provide Plaintiffs and other similarly situated employees with the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1 when they were hired or at any point during their employment.

59.     Likewise, Defendants did not provide Plaintiffs and other similarly situated employees with accurate wage statements under N.Y. Lab. Law § 195.3 with any wage payment.

60.     Defendants did not post at the store a poster advising Plaintiffs and other employees of their right to a minimum wage and overtime premium pay.

Racial and National Origin Discrimination against Plaintiff Cevallos

61.     Plaintiff Cevallos is a Hispanic male of Mexican national origin, whose native language is Spanish.

62.     At all relevant times, Defendants and their managers were and are individuals from the Democratic Republic of the Congo, Pakistan and countries in Africa and the Middle East.

63.     At all relevant times, Plaintiff Cevallos's managers, Jimmy [last name unknown] ("Manager"), was and is a male from the Democratic Republic of the Congo.

64.     Defendant Andha is a male, who, upon information and belief, is from Pakistan.

65.     The Manager treated Plaintiff Cevallos significantly worse than other non-Hispanic and non-Mexican employees, by making inappropriate and discriminatory comments to him, regularly raising his voice and even physically assaulting him at work.

66.     The Manager and Defendants treated the African and Pakistani workers significantly better than their Hispanic and Mexican workers.

67.     The Manager treated African and Pakistani workers with special privileges, allowing them to come to work late without penalty, take longer lunches and breaks, sometimes lasting up to 2-hours, without wage deductions, and allowing them to avoid dirty and heavy-duty work at the stores. Instead, Plaintiff Cevallos and other Hispanic and Mexican employees were not afforded any flexibility in taking breaks, were frequently penalized for being a few minutes late to come to work or from lunch and were made to do the dirties and hardest work at the stores, as a result often getting injured at work.

68.     The Manager often made discriminatory anti-Hispanic and anti-Mexican comments about Plaintiff Cevallos and his Hispanic, Latin and Mexican coworkers, saying that Mexicans, Dominicans and other people from Latin America are "not people, but are animals."

69.     The Manager also often stated that "immigrants are not people" and "immigrants are nobodies," and "Hispanics and Latinos are nobodies."

70.     During Plaintiff Cevallos's employment, the Manager regularly repeated that "Hispanics are animals and that's why they are not people."

71.     The Manager spoke both English and some Spanish and would say these comments in both English and Spanish to the Hispanic and Latin workers, the other employees and Defendants' customers.

72.     From 2016 to 2021, Plaintiff Cevallos asked the Manager for raises several times. In response, on more than one occasion, the Manager refused him a raise and said "I will not give you a raise, you are not African."

73.     Upon information and belief, African and Pakistani employees got regular raises from the Manager and Defendants.

74.     In 2019, the Manager got infuriated with Plaintiff Cevallos over a routine matter at the store. Instead of explaining to Plaintiff Cevallos how he wants the job done, the Manager shoved him so hard that Plaintiff Cevallos fell on the floor and injured his knee while swearing at him and telling him that he is useless.

75.     To date, Plaintiff Cevallos suffers from knee pain from the Manager pushing him to the floor and takes medication to control the pain and the injury.

76.     In or around September or October 2021, the Manager and Plaintiff Cevallos got into an argument when Plaintiff Cevallos asked the Manager for a discount on his cousin's purchase at the store but the Manager refused. Plaintiff Cevallos reminded the Manager that he regularly gave other African and Pakistani employees and their family discounts if they shopped at the store, so his cousin should get the same privilege.

77.     Despite Plaintiff Cevallos' request to be treated equally with other African and Pakistani employees, the Manager once again refused to give Plaintiff Cevallos's cousin a discount and called Plaintiff Cevallos stupid. When Plaintiff Cevallos protested against the disrespectful language, the Manager slapped him across his face.

78.     After getting slapped in the face, Plaintiff Cevallos looked shocked, while the Manager yelled at him "you can't even call the police, you are Mexican, . . .  Try it, you will get deported."

79.     On October 9, 2021, the Manager once again lost control of his temper during his employment and got physically abusive with Plaintiff Cevallos in Dollar Deals, by pushing and shoving him repeatedly. Plaintiff Cevallos told the Manager that he would sue him if he did not stop pushing and shoving him, in response the Manager yelled that he can't sue him because he is Mexican.

80.     On October 11, 2021, Plaintiff Cevallos came back to work and, upon seeing him, the Manager called the police. Then, the Manager threatened Plaintiff Cevallos with deportation by telling him "I will get you deported" and then fired him.

81.     Defendants' continued and repeated mistreatment and discrimination of Plaintiff Cevallos made his work environment hostile and unbearable.

82.     The Managers repeated, nonconsensual, physical touching of Plaintiff Cevallos caused him physical pain and emotional distress, instilling fear for his physical and mental safety at work.

83.     Defendants' discriminatory practices, harassment and hostile work environment caused Plaintiff Cevallos severe stress and anxiety and made him depressed, making it an unhealthy work environment.

84.     At all relevant times, Defendants were aware of the repeated and continuous race and national origin discrimination, hostile work environment and harassment at their workplace, but permitted it to continue unremedied for so long as to amount to a discriminatory policy and practice.

85.    As a result of Defendants' harassment and discrimination of him, Plaintiff Cevallos has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

<u>CLASS ACTION ALLEGATIONS</u>

86.    Plaintiffs assert these allegations and claims on their own and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

> All persons whom Defendants employ and have employed as retail associates, laborers and in other comparable positions with different titles, at any time since March 23, 2016 to the entry of judgment in this case (the "Class Period"), who were non-exempt employees within the meaning of the New York Labor Law (the "Class Members").

87.    The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Defendants' sole control, upon information and belief, more than 40 Class Members exist.

88.    Plaintiffs' claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

89.    Defendants have acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

90.     Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in employment law, wage and hour law, and class action litigation.

91.     Plaintiffs have the same interest in this matter as all other Class Members and their claims are typical of Class Members'.

92.     Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including but not limited to:

a.     whether Defendants employed Plaintiffs and the Class Members, individually or jointly, within the meaning of the Labor Law;

b.     whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.     what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.     whether Defendants failed or refused to pay the Class Members minimum wages, overtime premium pay for all hours worked in excess of forty (40) hours per workweek, and spread-of-hours pay;

e.     whether Defendants failed to provide the Class Members with wage notices and wages statements under Labor Law §§ 195.1 and 195.3;

f.     whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided under the Labor Law in any area where Plaintiffs and the Class Members are employed;

g.      whether the individual Defendants participated in the day-to-day management of the restaurant and are "joint employers" and liable to Plaintiffs and the Class Members;

h.      whether Defendants are liable for all damages claimed hereunder, including but not limited to, interest, costs and disbursements and attorneys' fees; and

i.      whether Defendants should be enjoined from such violations of the Labor Law in the future.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

93.      Under 29 U.S.C. § 206, Plaintiffs seek to assert these allegations and claims as a collective action:

> All persons whom Defendants employ and have employed as retail associates, laborers and in other comparable positions with different titles, at any time since March 23, 2019 to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA (the "Collective Action Members").

94.      Plaintiffs and the Collective Action Members are similarly situated on several legal and factual issues, including but not limited to:

a.      whether Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA;

b.      whether Plaintiffs and the Collective Action Members performed similar duties;

c.      whether Defendants failed to pay the Collective Action Members overtime compensation for hours worked in excess of forty (40) hours per workweek, violating the FLSA and the regulations promulgated thereunder;

d.       whether Defendants made unlawful deductions from Plaintiffs' and the Collective Action Members' earned wages; and

e.       whether the statute of limitations should be estopped or equitably tolled due to Defendants' statutory violations.

<u>FIRST CAUSE OF ACTION</u>
FAILURE TO PAY OVERTIME PREMIUM PAY UNDER THE FLSA
(On Behalf of Plaintiffs and the Collective Action Members)

95.      Plaintiffs reallege every preceding allegation as if set forth fully herein.

96.      Plaintiffs consent, through counsel, to be parties to this action under 29 U.S.C. §216(b).

97.      Defendants employed, and/or continue to employ, Plaintiffs and the Collective Action Members within the meaning of the FLSA.

98.      Defendants knowingly failed to pay Plaintiffs and the Collective Action Members the overtime wages to which they were entitled under the FLSA.

99.      Defendants were required to pay Plaintiffs and the Collective Action Members no less than 1.5 times the regular rate at which they were paid for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

100.     At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to their employees for their hours worked in excess of 40 hours per workweek.

101.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

102.    Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs and the Collective Action Members' compensation.

103.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies under 29 U.S.C. § 255 and should be equitably tolled between the filing of this lawsuit and when the Court conditionally certifies the collective action.

104.    Defendants have failed to make, keep and preserve records with respect to their employees sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

105.    In failing to compensate Plaintiffs and the Collective Action Members for all compensable hours worked, Defendants violated the FLSA and the regulations thereunder, including 29 C.F.R. §§ 785.13, 785.11.

106.    As a result of Defendants' FLSA violations, Plaintiffs and the Collective Action Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation under 29 U.S.C. § 216(b), and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### FAILURE TO PAY THE MINIMUM WAGE
### UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Action Members)

107.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

108.    Defendants are "employers" within the meaning of Labor Law §§ 190, 196-d, 651(5), 652 and supporting New York Statement Department of Labor Regulations and employed Plaintiffs and the Class Members.

109.    The wage payment provisions of Article 6 of the Labor Law and supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiffs and the Class Members.

110.    Under the Labor Law and supporting New York Statement Department of Labor Regulations, Defendants were required to pay Plaintiffs and the Class Members the statutory minimum wage.

111.    Defendants failed to pay Plaintiffs and the Class Members the statutory minimum wage violating the Labor Law.

112.    Upon information and belief, Defendants failed to post, in a conspicuous place upon their premises a notice issued by the New York State Department of Labor summarizing minimum wage provisions, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. § 137-2.3, *et seq.*

113.    Upon information and belief, Defendants failed to furnish Plaintiffs and the Class Members a statement with every wage payment listing the correct hours worked, rates paid, allowances taken, gross wages, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. § 137-2.2, *et seq.*

114.    Defendants failed to pay the Class Members the statutory minimum wage for each hour worked, making them liable for those hours at the statutory minimum wage.

115.    Defendants are accordingly liable to Plaintiffs and the Class Action Members for the unpaid hourly minimum wage for all the hours worked.

116.    Defendants have willfully violated the Labor Law by knowingly and intentionally failing to pay the Class Members the minimum wage.

117.    Due to Defendants' Labor Law violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

<u>THIRD CAUSE OF ACTION</u>
FAILURE TO PAY THE OVERTIME PREMIUM PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Action Members)

118.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

119.    Under the Labor Law and supporting New York Statement Department of Labor Regulations, Defendants were required to pay Plaintiffs and the Class Members one and 1.5 times their regular rate of pay for all hours they worked in excess of 40 per workweek.

120.    Defendants failed to pay Plaintiffs and the Class Members overtime wages to which they were entitled, violating N.Y. Lab Law § 650 and Part 142, § 142-2.2 of Title 12 of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act.

121.    In failing to compensate Plaintiffs and the Class Members for all compensable hours worked, Defendants violated the Labor Law and the regulations thereunder.

122.    Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay the Class Members the correct amount of overtime wages.

123.    Due to Defendants' Labor Law violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

<u>FOURTH CAUSE OF ACTION</u>
FAILURE TO PAY SPREAD-OF-HOURS PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Action Members)

124.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

125.    12 N.Y.C.R.R. § 142-2.4 requires that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours[.]"

126.    Defendants required Plaintiffs and Class Members to typically work more than 10 hours in a day.

127.    At all times relevant to this action, Defendants failed to pay Plaintiffs and Class Members the "spread of hours" premium required by 12 N.Y.C.R.R. § 142-2.4.

128.    Defendants' failure to pay "spread of hours" compensation for work performed by Plaintiffs and Class Members after 10 hours in day was willful.

129.    For the foregoing reasons, Defendants have violated 12 N.Y.C.R.R. § 142-2.4 and are liable to Plaintiffs and Class Members in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

130.    Due to Defendants' Labor Law violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours wages, statutory

liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

<u>FIFTH CAUSE OF ACTION</u>
FAILURE TO PROVIDE 195.1 NOTICE UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Action Members)

131.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

132.    Defendants have willfully failed to supply Plaintiffs and the Class Members with the required Notice and Acknowledgement of Pay Rate and Payday under Labor Law § 195.1(a) within ten business days of their first employment date.

133.    Due to Defendants' violations of Labor Law § 195.1, Plaintiffs and the Class Members are entitled to recover from Defendants $50.00 for each work day that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. New York. Lab. Law § 198(1)-b (2016).

<u>SIXTH CAUSE OF ACTION</u>
FAILURE TO PROVIDE 195.3 WAGE STATEMENT
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Action Members)

134.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

135.    Defendants have willfully failed to supply Plaintiffs and the Class Members with the required statement with every payment of wages, violating Labor Law § 195.3.

136.    Due to Defendants' violations of Labor Law § 195.3, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants $100.00 for each work week that the violations occurred or continue to occur, or a total of $5,000.00, as provided for by Labor Law § 198(1)-d, reasonable attorneys' fees, costs, injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
### NATIONAL ORIGIN DISCRIMINATION
### UNDER THE NYSHRL
#### (On Behalf of Plaintiff Cevallos)

137.     Plaintiff Cevallos realleges every preceding allegation as if set forth fully herein.

138.     At all relevant times, Plaintiff Cevallos was an "employee" and "person" within the meaning of the NYSHRL.

139.     At all relevant times, Defendants were "employers" under the NYSHRL.

140.     Under the NYSHRL, "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer . . . because of an individual's . . . race, . . . national origin . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a).

141.     Plaintiff Cevallos was treated less well than his non-Hispanic and non-Mexican colleagues because of his national origin, violating N.Y.C. Admin. Code § 8-107(1)(a).

142.     Defendants violated the NYSHRL when they discriminated against him in terms, conditions and privileges of employment because of his national origin.

143.     No legitimate, non-discriminatory reasons exist for the adverse actions Defendants, their employees, supervisors and agents took against Plaintiff Cevallos.

144.     Defendants are vicariously liable for the actionable hostile and discriminatory environment created by their management and supervisors, including the Manager, who had immediate or successively higher authority over Plaintiff Cevallos.

145.    As a result of Defendants' discrimination and harassment of him, Plaintiff Cevallos has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, medical expenses, and loss of enjoyment of life.

EIGHTH CAUSE OF ACTION
NATIONAL ORIGIN DISCRIMINATION
UNDER THE NYCHRL
(On Behalf of Plaintiff Cevallos)

146.    Plaintiff Cevallos realleges every preceding allegation as if set forth fully herein.

147.    At all relevant times, Plaintiff Cevallos was an "employee" and "person" within the meaning of the NYCHRL and Defendants were "employers."

148.    The NYCHRL makes it unlawful for an "employer or an employee or agent thereof . . . : (1) To represent that any employment or position is not available when in fact it is available; (2) To refuse to hire or employ or to bar or to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment," because of actual or perceived race or national origin of any person. N.Y.C. Admin. Code § 8-107(1)(a).

149.    Plaintiff Cevallos was treated less well than his non-Hispanic and non-Mexican colleagues because of his national origin, violating N.Y.C. Admin. Code § 8-107(1)(a).

150.    Defendants violated the NYCHRL when they discriminated against him in terms, conditions and privileges of employment because of his national origin.

151.    No legitimate, non-discriminatory reasons exist for the adverse actions Defendants, their employees, supervisors and agents took against Plaintiff Cevallos.

152. Defendants are strictly liable for the actionable hostile and discriminatory environment created by their supervisors, employees, and agents, including the Manager, who had immediate or successively higher authority over Plaintiff Cevallos.

153. Defendants harassed and discriminated against Plaintiff Cevallos with malice and/or reckless indifference to his rights under the NYCHRL.

154. As a result of Defendants' discrimination and harassment of him, Plaintiff Cevallos has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

155. As a result of Defendants' unlawful conduct, Plaintiff Cevallos can recover punitive damages. N.Y.C. Admin. Code § 8-502.

NINTH CAUSE OF ACTION
RACE DISCRIMINATION
UNDER THE NYSHRL
(On Behalf of Plaintiff Cevallos)

156. Plaintiff Cevallos realleges every preceding allegation as if set forth fully herein.

157. Plaintiff Cevallos was treated less well than his non-Hispanic colleagues because of his race, violating N.Y.C. Admin. Code § 8-107(1)(a).

158. Defendants violated the NYSHRL when they discriminated against him on his terms, conditions and privileges of employment because of his race.

159. No legitimate, non-discriminatory reasons exist for the adverse actions Defendants, their employees, supervisors and agents took against Plaintiff Cevallos.

160. As a result of Defendants' discrimination and harassment of him, Plaintiff Cevallos has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress,

mental anguish, emotional pain and suffering, inconvenience, medical expenses and loss of enjoyment of life.

TENTH CAUSE OF ACTION
RACE DISCRIMINATION
UNDER THE NYCHRL
(On Behalf of Plaintiff Cevallos)

161.    Plaintiff Cevallos realleges every preceding allegation as if set forth fully herein.

162.    Plaintiff Cevallos was treated less well than his non-Hispanic colleagues because of his race, violating N.Y.C. Admin. Code § 8-107(1)(a).

163.    Defendants violated the NYCHRL when they discriminated against him on his terms, conditions and privileges of employment because of his race.

164.    No legitimate, non-discriminatory reasons exist for the adverse action Defendants, their employees, supervisors and agents took against Plaintiff Cevallos.

165.    Defendants are strictly liable for the actionable hostile and discriminatory environment created by their supervisors, employees, and agents, including The Manager, who had immediate or successively higher authority over Plaintiff Cevallos.

166.    Defendants harassed and discriminated against Plaintiff Cevallos with malice and/or reckless indifference to his rights under the NYCHRL.

167.    As a result of Defendants' discrimination and harassment of his, Plaintiff Cevallos has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, medical expenses and loss of enjoyment of life.

168.    As a result of Defendants' unlawful conduct, Plaintiff Cevallos can recover punitive damages. N.Y.C. Admin. Code § 8-502.

## ELEVENTH CAUSE OF ACTION
### HOSTILE WORK ENVIORNMENT
### UNDER THE NYSHRL
### (On Behalf of Plaintiff Cevallos)

169.     Plaintiff Cevallos realleges every preceding allegation as if set forth fully herein.

170.     Plaintiff Cevallos was treated less well than his non-Hispanic, non-Mexican colleagues because of his race and national origin, violating N.Y.C. Admin. Code § 8-107(1)(a).

171.     Defendants' discriminatory acts and harassment that Plaintiff Cevallos endured constitute a hostile work environment under NYSHRL.

172.     The discriminatory acts, harassment and hostile work environment that Plaintiff Cevallos endured were a continuous series of related acts that were done by the same individuals and that Defendants permitted to continue unremedied.

173.     Defendants violated the NYSHRL when they subjected Plaintiff Cevallos to hostile work environment by harassing him and discriminated against him in terms, conditions and privileges of employment because of his race and national origin.

174.     As a result of Defendants' subjecting him to the hostile work environment, Plaintiff Cevallos has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, medical expenses and loss of enjoyment of life.

TWELFTH CAUSE OF ACTION
HOSTILE WORK ENVIORNMENT
UNDER THE NYCHRL
(On Behalf of Plaintiff Cevallos)

175.    Plaintiff Cevallos realleges every preceding allegation as if set forth fully herein.

176.    Plaintiff Cevallos was treated less well than other employees because of his race and national origin, violating N.Y.C. Admin. Code § 8-107(1)(a).

177.    The discriminatory acts and harassment that Plaintiff Cevallos endured constitute a hostile work environment under NYCHRL.

178.    As a result of Defendants subjecting him to the hostile work environment, Plaintiff Cevallos has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

179.    Defendants harassed and subjected Plaintiff Cevallos to hostile work environment with malice and/or reckless indifference to his rights under the NYCHRL.

180.    As a result of Defendant's unlawful conduct, Plaintiff Cevallos can recover punitive damages against Defendant. N.Y.C. Admin. Code § 8-502.

## THIRTEENTH CAUSE OF ACTION
CIVIL ASSAULT
UNDER NEW YORK LAW
(On Behalf of Plaintiff Cevallos)

181.    Plaintiff Cevallos realleges every preceding allegation as if set forth fully herein.

182.    When the Manager pushed Plaintiff Cevallos to the floor, shoved him and slapped his face, he intentionally put Plaintiff Cevallos in imminent fear of harmful contact.

183.    The Manager assaulted Plaintiff Cevallos multiple times at Defendants' stores.

184.    The Manager made physical contact with Plaintiff Cevallos without his consent and he caused him physical harm, including a knee injury and pain.

185.    When the Manager slapped Plaintiff Cevallos's face, shoved him and pushed him to the floor, he was acting within the scope of his employment, as Defendants were aware that he had been discriminating and harassing Plaintiff Cevallos and other Hispanic employees and was prone to angry behavior towards them and did nothing to stop it.

186.    Based on the Manager's known tendency to discriminate in the workplace, Defendants could have foreseen that he would slap Plaintiff Cevallos's face, push him to the floor and shove him.

187.    Defendants are vicariously liable for The Managers' conduct under *respondeat* superior.

FOURTEENTH CAUSE OF ACTION
CIVIL BATTERY
UNDER NEW YORK LAW
(On Behalf of Plaintiff Cevallos)

188.     Plaintiff Cevallos realleges every preceding allegation as if set forth fully herein.

189.     Plaintiff Cevallos did not consent to the Manager slapping his face, pushing him down to the floor and shoving him.

190.     The Manager intentionally slapped Plaintiff Cevallos's face, pushed him down to the floor and shoved him.

191.     The Manager committed battery against Plaintiff Cevallos.

192.     Defendants are vicariously liable for the Manager's battery under *respondeat superior*

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class and Collective Action Members, respectfully requests this Court grant the following relief:

a.     Accepts jurisdiction over this matter;

b.     Certifying this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Rule 23 Class Members and appointing Plaintiffs and their counsel to represent the Class Members;

c.     Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual

Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members and tolling of the statute of limitations;

       d.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the Labor Law, NYSHRL and NYCHRL;

       e.     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

       f.     An award for unpaid minimum wages under the Labor Law;

       g.     An award for unpaid overtime premium pay under the Labor Law and the FLSA;

       h.     An award for unpaid spread-of-hours pay under the Labor Law;

       i.     An award for failing to provide the N.Y. LAB. LAW § 195.1 Notice;

       j.     An award for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

       k.     An award of liquidated damages as a result of Defendants' Labor Law violations;

       l.     An award of liquidated damages as a result of Defendants' willful FLSA violations;

       a.     An award for back pay and front pay under the NYSHRL and NYCHRL;

       b.     Equitably tolling the statute of limitations under the FLSA;

       c.     An award of pre-judgment and post-judgment interest;

d.    Defendants being jointly and severally liable;

e.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

f.    Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
March 23, 2022

LIPSKY LOWE LLP

s/ Douglas B. Lipsky
Douglas B. Lipsky
Milana Dostanitch
420 Lexington Avenue, Suite 1830
New York, New York 10170
212.392.4772
doug@lipskylowe.com
milana@lipskylowe.com